IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA ODOMS | : | Civil Action No: 12-7146 |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| YWCA OF BUCKS COUNTY | : | |
| Defendant | : | |

Tucker, C.J.                                                                                          June ____, 2013

### MEMORANDUM

Patricia Odoms ("Plaintiff" or "Odoms") brings suit against her former employer, the YWCA of Bucks County ("Defendant" or "YWCA"), alleging retaliatory discharge under the section 3730(h) of the False Claims Act (Count I), a state law claim under the Pennsylvania Whistleblower Law, 43 P.S. § 1424 et seq., (Count II), and a wrongful discharge claim arising under a public policy exception to Pennsylvania's at-will employment status (Count III). Presently before the court is the YWCA's motion to dismiss Odom's federal claim under the False Claims Act and accordingly remand her state law claims.

### I. Factual and Procedural Background

Defendant employed Plaintiff for approximately seven months as Chief Executive Officer of the YWCA of Bucks County. (Compl. at ¶ 11). During this time, Plaintiff discovered that Defendant was involved in illegally misappropriating federal funds from the Office of Children and Youth. (Compl. at ¶ 22). Plaintiff discovered the grant was improperly billed for 60% to 70% of Defendant's administrative costs despite only a fraction of time allotted for projects authorized by the grant. (Compl. at ¶ 23). Plaintiff

1

notified Defendant of the illegal activity multiple times. (Compl. at ¶¶ 16, 19, 25, 27, 31, 34). In response, Defendant reprimanded Plaintiff by removing her privileges to speak with her superiors and accusing her of attempting to destroy the company. (Compl. at ¶ 28). Plaintiff alerted the Defendant's Board of Directors and the Financial/Executive Committee and was told to omit any findings of misappropriations from her report to the Office of Children and Youth. (Compl. at ¶¶ 35-36). Despite the objections by the Defendant, Plaintiff disclosed her findings to the Office of Children and Youth. (Compl. at ¶¶ 36-39). Three days after informing the Defendant of her disclosure she was suspended, which eventually led to her being terminated. Defendant's reason for the termination was poor performance. (Compl. at ¶ 43). Subsequent to her termination, Plaintiff filed this action, claiming her termination was the result of her disclosure to the Office of Children and Youth. Defendant in turn submitted a motion to dismiss arguing that Plaintiff fails to follow the procedural requirements for filing a claim under the False Claims Act ("FCA") and, alternatively, fails to plead sufficient facts to make out a FCA claim.

**II.    Standard of Review**

Defendant moves to dismiss Count I of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss for failure to state a claim, the Court is "required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). To be considered "well pleaded"

the complaint "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 1965 n. 3. The Court further explained that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court mandates the plaintiff must have "nudged [their] claim across the line from conceivable to plausible, or the complaint must be dismissed." As that Court held, the Plaintiff need not prove the case at this stage but must demonstrate more than a "sheer" possibility that the defendant has acted unlawfully." *Id*.

### III. <u>Discussion</u>

The central issue before the Court is the YWCA's motion to dismiss Plaintiff's FCA claim. Defendant asserts that Plaintiff improperly filed her claim because she did not follow the procedural guidelines under § 3730(b)(2) which requires the claim first be filed in camera under seal. Furthermore, the YWCA argues that Plaintiff's claim for relief is insufficiently plead and should be dismissed. In order to rule on the motion to dismiss, it is necessary the Court decide whether Plaintiff was required to follow the procedural requirements outline in §3730(b)(2) and whether Plaintiff has plead enough facts to substantiate her FCA claim.

####    a. *Plaintiff has exercised the procedural requirements necessary to state a claim under the False Claims Act.*

Defendant argues that Plaintiff's complaint "should be filed in-camera, shall remain under seal for at least sixty days and shall not be served on the defendant until the Court so orders." 31 U.S.C. § 3730(b). However, Defendant disregards the fact that Plaintiff's claim arises under § 3730(h) for retaliatory conduct and is not a §3730(b) qui tam claim. As provided, "[s]ection 3730(h) retaliation claims, unlike § 3730(b) *qui tam* claims, are not subject to the procedural requirements of § 3730(b)(2)." *U.S. ex rel. Pilon*

3

*v. Martin Marietta Corp.*, 60 F.3d 995, 1000 (2d Cir. 1995). A distinct difference between the § 3730(b) claim and the § 3730(h) claim is the influence of the United State's government in the litigation. Under §3730(b), "[w]hether or not the United States intervenes, the relator can't dismiss the suit without permission of the United States and the court." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 852 (7th Cir. 2009). In contrast under § 3730(h) "the aggrieved employee is in charge and may pursue, settle, or dismiss the litigation; the plaintiff's errors affect only himself. An ex-employee is free to represent himself in retaliatory-discharge litigation, but a relator in a *qui tam* action may proceed only through counsel." *Id*.

While the Court acknowledges that the aforementioned case law from the Second and Seventh Circuits are non-binding, such cases are persuasive and provide guidance in resolving the present matter. Moreover, Defendant presents no precedent to support his assertion that § 3730(b) and § 3730(h) should follow the same procedure. As such, the Court finds its argument to be unavailing.

### b. *Plaintiff makes out a sufficient claim under § 3730(h) of theFCA.*

In finding the Plaintiff properly filed a retaliatory claim under §3730(h), the Court now looks to the elements of the claim. In proving a 3730(h) claim, the Plaintiff must first prove she engaged in "protected conduct," (i.e., acts done in furtherance of an action under § 3730). Second, Plaintiff must also prove that she was discriminated against because of this "protected conduct." *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir.2001). In order to satisfy the second prong the Plaintiff must prove the Defendant had knowledge of her protected activity and that such knowledge is the motivation behind the termination. *Id.*

4

1. **<u>Protected Conduct</u>**

Here, the Court finds that Plaintiff participated in protected conduct. The Third Circuit holds "for conduct to be protected, the language of § 3730(h) requires that the conduct be taken furtherance of a False Claims Act action." *Dookeran v. Mercy Hosp. of Pittsburgh*, 281 F.3d 105, 108 (3d Cir. 2002) (internal quotations omitted). In order to determine the connection between the conduct and the pursuit of a FCA claim, the Court looks to "whether [plaintiff's] actions sufficiently furthered 'an action filed or to be filed under' the [False Claims Act] and, thus, equate to 'protected [conduct].'" *Id.* (quoting *Hutchins,* 253 F.3d at 187.)

Defendant asserts that at this point it is not necessary to resolve whether Plaintiff's conduct was in furtherance of a viable FCA case. (Def.'s Resp. at p. 2). Instead, the Defendant contends that Plaintiff's actions did not provide notice for the "distinct possibility" of a FCA claim because her actions were within the function of her position as CEO of the YWCA. Generally, the Third Court has held that performance within the function of one's position as an employee is not considered "protected conduct." *Hutchins r*, 253 F.3d at 188 (holding that where the employee did not conduct an independent investigation further than the assignment given by his supervisor, there was no valid FCA claim.) Moreover, engaging in conduct that is not adverse to the employer's agenda is insufficient to prove a claim of retaliatory discharge. *Atkinson v. Lafayette Coll.*, 653 F. Supp. 2d 581, 600 (E.D. Pa. 2009). (finding that the employee did not engaged in protected conduct where she repeatedly informed the employer of its

noncompliance with federal law and the employer responded by correcting such incompliance).

However, the Third Circuit has made clear that working within the function of one's position is not a complete bar to the conduct being considered "protected:"

> "While the court acknowledged that an employee may still engage in "protected conduct" even where the employee's job duties include investigating or reporting fraud, the employee would have to put the employer on notice that litigation is a distinct or reasonable possibility by characterizing the employer's conduct as illegal or fraudulent or recommending that legal counsel become involved.

*Atkinson*, 653 F. Supp. 2d at 598. As applied to other retaliatory claims, "in order to engage in a statutorily protected activity the employee must step outside his or her role of representing the company and file an action adverse to the employer, actively assist other employees in asserting ... rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected....". *Id.* (internal quotations omitted). It follows that in order to prove that the conduct engaged in was "protected" Plaintiff must establish she went beyond her role in representing the company to file an action adverse to the employer.

Plaintiff describes her duties with the YWCA to include "risk management, which required her to ensure that corrective action was taken, if necessary, to ensure compliance with all relevant federal and state laws and regulations and to ensure Defendant operated with the highest degree of safety and social responsibility." (Compl. at ¶14). Based on her job description, Plaintiff's discovery and notification of the apparent fraud were actions she should have taken while acting as CEO. However, Plaintiff's actions were adversely taken against her employer, which distinguishes the present matter from the

*Atkinson* case. In *Atkinson*, the employee repeatedly notified her employer of inconsistencies in accordance with her employment position. However, once the employer became aware of these inconsistencies, it pursued corrective action and, at that point, the employee's interest was aligned with that of her employer.

Here, the defendant did not attempt to correct the alleged misappropriation of funds reported by Plaintiff. Instead, Defendant responded to Plaintiff's report of alleged fraud by discontinuing her efforts, yet Plaintiff remained persistent in notifying the defendant on various executive levels, including the Board of Directors and the Financial Committees. Plaintiff went so far as to notify the grantor, the Office of Children and Youth. Accepting Plaintiff's well-pleaded facts to be true, the Court finds that her actions reached beyond her duties and, accordingly, amount to protected activity.

ii. **Notice of the "distinct possibility" of a FCA claim.**

The second element of an FCA retaliation claim is proving the retaliation occurred as a result of this protected conduct. The element of notice "is essential because without knowledge an employee is contemplating a False Claims Act suit, there would be no basis to conclude that the employer harbored § 3730(h)'s prohibited motivation." *Campion v. Ne. Utilities*, 598 F. Supp. 2d 638, 657 (M.D. Pa. 2009). Simply put, the employer must know "that the employee is engaged in protected activity—that is, in activity that reasonably could lead to a False Claims Act case." *Id*. (Quoting *Hutchins,* 253 F.3d at 188.) A finding of notice occurs where "a fact finder could reasonably conclude that the employer could have feared that the employee was contemplating filing a *qui-tam* action against it or reporting the employer to the government for fraud." *Id.*

In her Complaint, Plaintiff repeatedly refers to informing the Defendant of her intentions to report her findings to the Office of Children and Youth. Prior to her termination, Plaintiff informed the Board of Directors and the Financial Executive Committee of her intentions to fully cooperate with any investigation conducted by the Office of Children and Youth. (Compl. at ¶37). Five days later, Plaintiff reported her findings to the Office of Children and Youth. (Compl. at ¶ 39). Three days after reporting the alleged fraud to the Office of Children and Youth, Plaintiff informed Defendant of her actions. (Compl. at ¶ 40). Based on the aforementioned allegations, the Court finds that Plaintiff has pled sufficient facts alleging that Defendant was put on notice of the distinct possibility of a FCA case being filed.

## IV. Conclusion

For the reasons set forth above, Defendant's motion to dismiss is denied and, accordingly, the Court will retain supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. An appropriate order follows.